UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

***************************************
| | |
|---|---|
| CARLA GERICKE, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * Case No: 1:11-cv-00231-SM |
| | * |
| TOWN OF WEARE, et al., | * |
| | * |
| Defendants. | * |

***************************************

## INDIVIDUAL DEFENDANTS' JOINT NOTICE OF APPEAL

1.  Individual Defendants, Police Chief Gregory C. Begin, Lieutenant James L. Carney, Officer Brandon Montplaisir, and Sergeant Joseph Kelley (collectively "Defendants"), by their counsel, file this Notice of Appeal to the United States Court of Appeals for the First Circuit, pursuant to F.R.A.P. 3 and F.R.A.P. 4.

2.  Defendants appeal an order from the United States District Court for the District of New Hampshire, dated October 15, 2012, which granted in part and denied in part their motions for summary judgment. Defendants file this interlocutory appeal based on the district court's denial of qualified immunity which presents pure questions of law. *See* attached Court Order, Opinion No. 2012 DNH 184 (October 15, 2012) (McAuliffe, J).

3.  Defendants believe they are entitled to qualified immunity as a matter of law because the uncontested facts as found by the district court demonstrate that a reasonable police officer could, and in fact would, believe that Plaintiff was interjecting herself into, and was disruptive and interfering with, a late-night troublesome traffic stop. This appeal presents a very different

factual and legal setting than the one presented in *Glik v. Cunniffee*, 655 F.3d. 78, 85 (1st Cir. 2011) (a "traffic stop is worlds apart from an arrest on the Boston Common").

    4.   The district court erred as a matter of law in holding that defendants are not entitled to qualified immunity for charging plaintiff with illegal wiretapping in violation of N.H. Rev. Stat. Ann. ("RSA") 265:4, where the district court found the following undisputed facts:

        a.  On March 25, 2010, at approximately 11:30 pm, defendant Sergeant Joseph Kelley, initiated a traffic stop of a car that he observed "travelling past him at a high rate of speed." *See* Court Order, 4.

        b.  Plaintiff, who was following in a separate car, pulled in "directly behind Sergeant Kelley's police cruiser and stopped." *See* Court Order, 4.

        c.  "Traffic stops, particularly those conducted late at night, pose a risk of danger to police officers, and [Plaintiff's] presence <u>at least arguably</u> added to that potentially dangerous situation." *See* Court Order, 4 – 5 (emphasis added).

        d.  "Given the lateness of the hour, the darkness, and the presence of four unknown people at the scene (two drivers and two passengers), Kelley <u>understandably found [Plaintiff's] presence to be a distraction</u>, requiring Kelley to divert his attention from the vehicle he had stopped." *See* Court Order, 4 (emphasis added).

        e.  Sergeant Kelley asked [Plaintiff] to leave <u>but she "initially resisted"</u> and "<u>interjected herself into the situation</u> by questioning the validity of the stop." *See* Court Order, 5 (emphasis added).

        f.  Plaintiff eventually complied with Sgt. Kelley's instruction and "moved her car from directly behind Kelley's cruiser into an adjacent parking area, where she positioned it parallel to the cruiser, about 30 feet away." *See* Court Order, 5.

  g. Sergeant Kelley responded to the other car once Plaintiff had moved and he encountered a driver, Tyler Hanslin, who was verbally abusive and carrying a Glock 9mm semi-automatic handgun in his waistband. *See* Court Order, 5.

  h. While Sergeant Kelley was responding to Hanslin, Plaintiff exited her car, stood behind a small fence, <u>yelled to Sergeant Kelley that she was recording him, and pointed what Sergeant Kelley suspected was a camera at him</u>. *See* Court Order, 6 (emphasis added).

  i. Plaintiff "[c]uriously . . . knew her video camera was not working at the time. Nevertheless, she kept it pointed at Kelley." *See* Court Order, 6.

  j. Sergeant Kelley told Plaintiff to return to her car, and she complied, "<u>but rolled the window down and 'kept the camera trained on him.'</u>" *See* Court Order, 6 (emphasis added).

  k. "According to Sergeant Kelley, <u>due to [Plaintiff's] continuing involvement, what had begun as a routine traffic stop had, in his view, become a potentially dangerous situation</u>. He was in the presence of four unknown people (at least one of who had been carrying a firearm); Hanslin was being less than fully cooperative; <u>[Plaintiff] was shouting at him and protesting the stop; and it was late at night, and he was alone</u>." *See* Court Order, 6 – 7 (emphasis added).

  l. Sergeant Kelley called for assistance and three officers arrived; Lieutenant Carney, Sergeant Peterson (not a defendant in this action), and Officer Montplaisir. *See* Court Order, 7.

  m. A third civilian car also arrived and the driver exited that vehicle. *See* Court Order, 7.

  n. Under these circumstances, "<u>the officers did face a potentially dangerous

situation: a late night traffic stop involving multiple vehicles, six citizens (some of whom were quite vocal, even confrontational, in expressing their opposition to the officers), and at least one firearm." *See* Court Order, 20 (emphasis added).

    o. "The responding officers divided their attention among the three cars." *See* Court Order, 7.

    p. Officer Montplaisir responded to Plaintiff and "Sergeant Kelley told him that [Plaintiff] had been interfering with Kelley's ability to conduct the traffic stop and that she may have a video camera." *See* Court Order, 7 (emphasis added).

    q. "Montplaisir approached [Plaintiff], identified himself as a police officer, and asked for her license and registration." *See* Court Order, 7.

    r. "Officer Montplaisir twice asked [Plaintiff] to produce her license and registration. On both occasions, she refused to comply and, instead, questioned the lawfulness of his request." *See* Court Order, 14.

    s. "Only when threatened with arrest and forcible removal from her vehicle, did [Plaintiff] give at least the appearance of attempted compliance." *See* Court Order, 14.

    t. "Officer Montplaisir gave [Plaintiff] sufficient opportunity to comply with his request, and, when she failed to do so, and offered no plausible excuse for her failure, he had probable cause to arrest her under state law for disobeying a police officer." *See* Court Order, 15.

    u. Officer Montplaisir "placed her under arrest for disobeying a police officer, handcuffed her, and escorted her to a police cruiser without incident." *See* Court Order, 9.

    v. "[Plaintiff] was transported to the police station where she was charged with disobeying a police officer, in violation of N.H. Rev. Stat. Ann. ("RSA") 265:4." *See* Court Order, 9.

      w.  "She was also charged with obstructing a governmental official, in violation of RSA 642:1, and unlawful interception of oral communications, in violation of RSA 570-A:2, I (also known as New Hampshire's law against wiretapping and eavesdropping)." *See* Court Order, 9.

      x.  Plaintiff's camera was also taken into possession. *See* Court Order, 9.

      y.  The New Hampshire prosecutor for the Town of Weare nolle processed the charges against Plaintiff prior to a probable cause hearing scheduled for May 25, 2010, and "sent the matter to the Hillsborough County Attorney for presentment to the Hillsborough County Grand Jury." *See* Court Order, 10 (quoting Affidavit of Catherine Baumann).

      z.  The police obtained a warrant [based on probable cause] to search the contents of Plaintiff's camcorder on November 2, 2010. *See* Court Order, 10.

      aa.  At the time the police obtained the warrant, "[Plaintiff] had not revealed to the officers that her video camera was not functioning on the night in question. So, when the officers applied for the search warrant, <u>they reasonably believed the camera contained evidence of criminal conduct.</u>" *See* Court Order, 10, Fn. 2 (emphasis added).

5.  Based on the undisputed facts found by the district court, defendant police officers are entitled to qualified immunity as a matter of law.

6.  The district court also erred as a matter of law in denying defendant police officers qualified immunity because plaintiff did not have a clearly established statutory or constitutional right to record police officers under the factual circumstances of this traffic stop.

7.  Because the district court's decision was in error based upon questions of law, this Court has proper jurisdiction over this interlocutory appeal.

WHEREFORE, Defendants respectfully request the following affirmative relief:

A. Accept jurisdiction over this appeal; and

B. Grant such further relief as justice requires.

Respectfully submitted,

**CHIEF GREGORY C. BEGIN;**
**LIEUTENANT JAMES J. CARNEY; and**
**OFFICER BRANDON MONTPLAISIR, Individually**
By Their Attorneys,
**GALLAGHER, CALLAHAN & GARTRELL, P.C.**

Date: October 29, 2012    By:    */s/ Charles P. Bauer*
Charles P. Bauer, Esq.
(NH Bar #208/1st Cir. Bar #42687)
214 N. Main Street, P.O. Box 1415
Concord, NH 03302-1415
(603)545-3651

**SERGEANT JOSEPH KELLEY, Individually**
By His Attorneys
**MAGGIOTTO & BELOBROW, PLLC**

Date: October 29, 2012    By:    */s/ Corey Belobrow*
Corey Belobrow, Esq.
(NH Bar #534/1st Cir. Bar #1082403)
58 Pleasant Street
Concord, NH 03301
(603) 225-5152

## CERTIFICATE OF SERVICE

I, Charles P. Bauer, hereby certify that a copy of the foregoing was sent to all ECF counsel.

Date: October 29, 2012    By:    */s/ Charles P. Bauer*
Charles P. Bauer, Esq.
(NH Bar #208/1st Cir. Bar #42687)